## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ROBERT TOMMANEY, *as executor of the Estate of Patrick Tommaney*** | : | Civ. No. 12-4843 (KM) |
| | : | |
| **Plaintiff,** | : | **OPINION** |
| | : | |
| **v.** | : | |
| | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

**MCNULTY, U.S.D.J.:**

### Introduction

This action is brought by Robert Tommaney, as executor of the estate of Patrick Tommaney, pursuant to 42 U.S.C. § 405(g). He seeks this Court's review of a final decision of the Defendant Commissioner of Social Security denying a claim for Social Security Disability Insurance benefits made by Patrick Tommaney. (Herein, "Tommaney" refers to Patrick Tommaney, who died on February 23, 2014.)

Patrick Tommaney sought benefits primarily on the basis of a chronic back condition, and secondarily on a traumatic injury. With regard to his back, Mr. Tommaney required spinal fusion surgery in March of 2002; from November 2001 to April 2003, he was unable to work and received disability benefits. He then returned to his job as a general manager of a restaurant, because the surgery had provided some relief. However, his pain allegedly increased again in May 2006. The pain was reportedly so great that he began abusing a prescription pain killer. Over the next two years, he received several forms of treatment, culminating in surgery to remove scar tissue, followed by physical therapy at the Kessler Rehabilitation Institute. Finally, by the end of July 2008, his pain subsided and he could allegedly resume working. The claimed disability period is therefore August 2006 through July 2008. Mr. Tommaney obtained new employment in January 2009.

1

It was during that period of disability that Mr. Tommaney suffered a traumatic accident. On August 22, 2006, he lost his footing trying to walk through a curbside construction zone in downtown Ramsey, New Jersey. He slipped and fell onto a piece of steel used for concrete reinforcement, and was impaled through the scrotum. He was hospitalized for five days, but after the initial extreme pain, he suffered no long term physical injuries. He alleged, however, that he suffered from post-traumatic stress disorder for some time following the accident.

On April 11th, 2007, Mr. Tommaney applied for Social Security disability benefits, running from August 26, 2006. The Commissioner, in July 2007, denied Mr. Tommaney's claim, and did so again upon reconsideration in February 2008. In July 2009, Plaintiff received a 44-minute hearing before an Administrative Law Judge in Newark. He appeared and testified without an attorney.

In March 2010, the ALJ issued a decision finding that Mr. Tommaney was not disabled. The Commissioner's Appeals Council thereafter denied a request for review by Mr. Tommaney, rendering the ALJ's decision the Commissioner's final decision. Mr. Tommaney initiated this action in August 2012, appealing the Commissioner's final decision.

This was a close case. Benefits were denied primarily on the basis of a judgment call at Step 5 of the required five-part analysis. Although my opinion differs from that of the able Administrative Law Judge, I intend no criticism in finding that the decision should be reversed and benefits should be awarded. Indeed, it was only the ALJ's compilation of a full record, despite the claimant's *pro se* status, and her willingness to entertain factual conclusions different from her own when soliciting alternative opinions from the vocational expert, that made a full review possible and avoided the necessity of a remand.

**Standard of Review**

My review of all legal issues presented is plenary.[1] As to factual findings, I will adhere to the ALJ's findings, as long as they are supported by substantial evidence.[2] For disputed findings, I will "determine whether the administrative record contains substantial evidence supporting the findings."[3] Substantial "means such relevant evidence as a reasonable mind might accept as adequate

---

[1] *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).
[2] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)).
[3] *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000)(emphasis added).

2

to support a conclusion."[4] This is "less than a preponderance of the evidence but more than a mere scintilla."[5]

I may, under 42 U.S.C. § 405(g) and the Third Circuit's *Podedworny* opinion, affirm, modify, or reverse the Secretary's decision, with or without a remand to the Secretary for a rehearing.[6]

Outright reversal with an awarding of benefits is appropriate only when a fully developed administrative record contains substantial evidence indicating that the claimant is disabled and entitled to benefits.[7] I note that in assessing whether the record is sufficiently developed, the courts take a more liberal approach when the petitioner has already faced long processing delays.[8]

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the required five step inquiry, described below.[9] Remand is also proper if the ALJ's decision lacks adequate reasoning or support for his or her conclusions, or if it contains illogical or contradictory findings.[10] It is also proper where the ALJ's findings are not the product of a complete review of the record evidence which "'explicitly' weigh[s] all relevant, probative and available evidence."[11] The Commissioner, though entitled to "accept some parts of the medical evidence and reject other parts," "must consider all the evidence," and explain any "rejection of probative evidence which would suggest a contrary disposition."[12]

**The ALJ's Five-Step Analysis**

There is a well-known, five-step evaluation process for determining whether a claimant is "disabled," and thus entitled to benefits under the Social Security Act. I here incorporate and summarize the process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and the ALJ's findings at each step.

---

[4] *Id.*
[5] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).
[6] *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865-66 (3d Cir. 2007).
[7] *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000)(citing *Podedworny*); *see also Bantleon v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 99537, *38-39 (D.N.J. 2010).
[8] *See Morales*; *Bantleon* at *38-39.
[9] *See Podedworny* 745 F.2d at 221-222.
[10] *See Burnett v. Commissioner of SSA*, 220 F.3d 112, 119-120 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x. 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.")
[11] *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).
[12] *Id.*

**STEP 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

At Step 1, the ALJ found that Mr. Tommaney did not have any gainful employment from August 2006 through July 2008. She thus moved on to Step 2.

**STEP 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

At Step 2, the ALJ found that Mr. Tommaney had the severe impairment of 'failed back syndrome (status post lumbar fusion),' and that this impairment would last at least another twelve months.

**STEP 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

At Step 3, the ALJ considered and rejected the possibility that Mr. Tommaney's impairment met or exceeded the criteria for any of the specific impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ thus moved on to Step 4.

**STEP 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). If not, move to step five.

At Step 4, the ALJ determined Mr. Tommaney's RFC. She characterized Mr. Tommaney's "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments" as follows: "generally capable of the exertional demands of a range of sedentary work as defined in 20 CFR 404.1567(a)," finding that he "was able to: lift and/or carry 5 lbs frequently and 10 lbs occasionally; perform unlimited pushing and pulling with the weight restriction noted above; sit for a total of 6 hours; and stand or walk for a total of two hours," and "that the claimant was able to perform jobs: that permit three breaks during the work day, each of which is at least 15 minutes duration; that require no climbing or ladders, ropes or scaffolds; that require only occasional climbing of stairs and ramps; that require only occasional

balancing, stooping, kneeling, crouching and/or crawling; and, due to pain and interference from mental health symptoms, could only perform jobs that [were] simple, unskilled and repetitive." Relying on the report of a vocational expert ("VE"), the ALJ found that Mr. Tommaney was not able to perform any of his past work in the restaurant industry.

> **STEP 5:** The burden shifts to the SSA to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

Here, at Step 5, the ALJ made the crucial finding that, "considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." The ALJ supported this with three paragraphs of reasoning, relying on one of the VE's responses. The ALJ thus found Plaintiff "not disabled."

## Analysis

Mr. Tommaney asserts four claims of error:

1. That the ALJ committed error, or denied him due process of law, by relying on testimony of a vocational expert (VE) who was not present at the hearing, but was engaged by the ALJ after the hearing, when the ALJ sent the VE exhibits and written interrogatories, and received responses utilized in her decision, without any notice to Plaintiff.

2. That the ALJ did not afford a full and fair hearing because she failed to develop a complete record by not eliciting testimony from Plaintiff concerning his residual functional capacity.

3. That the ALJ failed to provide adequate reasons for rejecting the treating physician's opinions.

4. That the medical evidence, including portions of the vocational expert's responses that the ALJ did not rely on, support a finding of disability.

There are no issues with the ALJ's findings at Step 1, 2, and 3; all of Mr. Tommaney's arguments are directed to Steps 4 and 5. His first three

arguments are procedural or legal in nature. The fourth, however, directly attacks the factual basis of the Step 4 and 5 findings, and requires me to determine whether they are supported by substantial evidence. Because the fourth argument is the most fundamental, I address it first.

### I.   Whether the RFC As Determined by the ALJ is Supported by Substantial Evidence

Plaintiff's substantive objection to the Step 4 and Step 5 findings centers on the content of the VE's interrogatory responses, filed after the hearing.[13]

The ALJ addressed post-hearing interrogatories to a VE named Melissa Fass-Karlin. The interrogatories were organized around three hypothethical sets of facts.

1. The first hypothetical asked the VE to assume that an individual of Mr. Tomanney's age, education, and work history was "able to perform a range of sedentary work." (This hypothetical tracks the ALJ's RFC finding for Mr. Tommaney.)

The second and third hypotheticals contained the same assumptions (*i.e.*, the RFC as determined by the ALJ), but added conditions.

2. The second hypothetical added the assumption that the claimant's symptoms (including unpredictable pain and discomfort) made it possible for the claimant to concentrate and focus for only 1/3 of the work day.

3. The third hypothetical added the assumption that such symptoms and pain, either on their own or by virtue of the medical attention they necessitated, would require the claimant to miss at least one day of work per week.

Analyzing the first hypothetical, the VE opined that such a claimant could not perform Mr. Tommaney's past work in the restaurant industry, but *could* perform the work of a jewelry assembler, a surveillance system monitor, or an order clerk. For both the second and third hypotheticals, the VE opined that "there would be no work for this person." (*Administrative Record* at 187-193 [ECF No. 6-6]).

The ALJ relied on the VE's response to the first hypothetical in support of her Step 4 and 5 findings. Thus, for example, she concluded that there were

---

[13]   Tommaney asserts a separate procedural issue as to whether it was proper to consider the VE's evidence without affording him notice and an opportunity to address it.

jobs available in the national economy that someone with Tommaney's RFC (but no further complications, as in hypotheticals 2 and 3) could perform.

The ALJ rejected the second and third hypotheticals because they supposedly represented limitations "more stringent" than those faced by Mr. Tommaney. That is the nub of Mr. Tommaney's objection. He contends that the third hypothetical, not the first, corresponds to the factual record. If accepted, the VE's opinion based on the third hypothetical is incompatible with the ALJ's findings, and would warrant reversal.

On this point, I agree with Mr. Tommaney. The substantial evidence in the record shows that Plaintiff dealt with near constant pain, and that he received consistent, varied medical attention, including invasive procedures. I accept that the evidence corresponds to the third, not the first, hypothetical.

In his undated "Disability Report-Appeal," Mr. Tommaney stated that he "live[s] in constant pain. I cna't sit, stand, walk or lay down for more than 30 minutes. From 9/25/07 to 1/15/08 I went for 6 epidurals, 2 discograms and 3 days of mainpultion  under anesthesia. It would have been impossible to work thru that time frame." (*See Administrative Record* at 160 [ECF No. 6-6 at 26]; spelling as in original). He stated that his pain was comparable to his pain in 2002 and 2003, when he received disability benefits. (*Id.* at 161 [ECF No. 6-6 at 27]). When he testified before the ALJ, he explained again that he had gone and was going through a variety of medical procedures and was receiving injections as often as once per week, making it impossible to work. (Transcript at 26).

In a report dated April 16, 2007, the Commissioner's Field Office interviewer, a P. Korney, reported observing, during a face-to-face interview with Mr. Tommaney, that Mr. Tommaney had difficulty sitting down and talking, commenting that "he was in obvious pain and would constantly have to stand up because of the back pain." (*See Administrative Record* at 167 [ECF No. 6-6 at 33]). I also note that in May 2007, Dr. Rouff reported that Mr. Tommaney was unable to work, had moderate limitations, and had significant range of motion limitations, see Ex. B9F. And in November 2007, Dr. Alladin noted that Mr. Tommaney had, since returning to his office that September, been requiring weekly or biweekly visits, and had been unable to work since May 2006, see Ex. B27F.

Indeed, the statement of facts in Plaintiff's moving brief, with which the Commissioner's brief did not disagree, accurately encapsulates and summarizes the record evidence. It documents continual medical attention for Mr. Tommaney's back during the relevant time. Beginning after Tommaney's

five-day hospitalization for the impalement accident, the medical history includes the following:

In October 2006, hospitalization at Christian Healthcare Center to detoxify following pain killer overdose and a visit to Dr. Mark Ruoff, which led to a November 1, 2006 visit back to Dr. Ruoff, at which time Dr. Rouff determined that Mr. Tommaney required an injection in his sacroiliac joint. The injection was performed thereafter, but on December 6, 2006, Dr. Rouff indicated that it was not effective. Then on January 3, 2007, Mr. Tommaney underwent a myelogram and a CAT scan, which led to a determination that certain previously installed hardware be removed from his back, and failing that as a solution, that a spinal cord stimulator be considered. On January 15, 2007, the hardware was removed, and he was directed to begin physical therapy on Janaury 23, 2007. By March 3, 2007, he was hospitalized at Valley Hospital due to severe low back pain. He underwent an MRI which revealed potential scarring, received a revised pain killer prescription, and was diagnosed with 'failed back syndrome' in April 2007. After discharge from the hospital, he went back to Dr. Ruoff, who noted a lack of progress after his eight weeks of physical therapy. Tommaney than saw a Dr. Umanoff, who continued medication and injections, and eventually, in August 2007, implanted leads for a trial spinal cord simulator in Tommaney's back. These were removed a few days later, after little relief. Tommaney received another MRI in September, 2007, following a visit to Dr. Charles Daknis of the Spine and Pain Center of New Jersey and New York. This led to an injection on September 25, 2007, and then one week later, three days of manipulation under anesthesia of his spine and left elbow by Dr. Alladin. Then, on October 11, October 25, and November 2, 2007, Dr. Mariam Rubbanni performed nerve root blocks. These procedures were all unsuccessful in relieving his pain. Finally, on April 10, 2008, Mr. Tommaney underwent laser and radiofrequency surgery to remove scar tissue between his discs and decompress his nerves, which were being compressed into a painful position. Three weeks later, he began outpatient physical therapy at Kessler Rehabilitation Center, reporting a 10/10 constant severe pain level at the outset, with restrictions in his mobility and daily activities. By June and July 2008, his pain finally subsided, and this corresponds with the end of his period of alleged disability.

I find that the medical evidence shows nearly constant, debilitating back pain, as well as frequent hospitalization and visits to doctor's offices for examinations, scans, and procedures. The level of medical attention that Mr. Tommaney's back pain warranted is significant and telling.

The documented evidence of Mr. Tommaney's pain and constant medical attention undermines the ALJ's RFC finding at Step 4. At the same time, it

8

undermines the finding at Step 5. For one thing, it shows impairment so serious and painful that Mr. Tommaney would have missed at least one day of work per week. The VE specifically testified that someone with the RFC posited by the ALJ plus symptoms severe enough to cause at least one missed day of work per week would *not* be able to perform any other job in the national economy. This makes sense: such a person's pain would be too debilitating, and his need for medical attention too frequent, to permit him to hold down even a sedentary job.

The RFC finding at Step 4 lacks substantial evidence in that it overstates Mr. Tommaney's ability to work. For this conclusion, I rely on the extensive medical evidence of excruciating pain requiring frequent medical attention.

At Step 5, the Commissioner has the burden of proof, *see Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). I do not think it was met here. I will reverse the Step 5 finding as well, for lack of substantial evidence, and award disability benefits.

## II.    Mr. Tommaney's First, Second and Third Claims as Alternative Bases for a Remand

Even if substantial-evidence review did not mandate reversal, the Plaintiff would be entitled to a remand for a new proceeding. I note, however, that additional proceedings, if not wholly impracticable, would be impaired by Mr. Tommaney's recent passing.[14]

### 1. Post-Hearing VE Testimony Without Notice

It was procedural error for the ALJ to send interrogatories, receive responses from the VE, and rely on those responses as evidence without notifying Mr. Tommaney or affording him an opportunity to respond. The Third Circuit has ruled that the Commissioner "may not rely on post-hearing reports without giving the claimant an opportunity to cross-examine the authors of such reports, when such cross-examination may be required for a full and true disclosure of the facts."[15] Even in cases where the claimant was notified of post-hearing responses, this court has remanded based on the lack of opportunity to cross-examine.[16] "[A] n opportunity for cross-examination is an

---

[14] *Fleshman v. Sullivan*, 933 F.2d 674 (8th Cir. Iowa 1991) (stating that further findings have "been made almost impossible by Mrs. Fleshman's intervening death").
[15] *Wallace v. Bowen,* 869 F.2d 187, 191-192 (3d Cir. 1989).
[16] *Roberts v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 68259 (D.N.J. May 14, 2013).

element of fundamental fairness of the hearing to which a claimant is entitled under []the Social Security Act."[17]

The Commissioner argues that any error was harmless, but I cannot agree. The VE's response was, for example, the sole evidence cited by the ALJ at Step 5.

I therefore rule in that alternative that the ALJ's reliance on post-hearing testimony without notice to this *pro se* claimant furnishes independent grounds for remand.

### 2.    *Alleged Failure to "Complete the Record"*

According to Plaintiff, the ALJ failed to carry out her duty to develop the administrative record. Plaintiff argues that the ALJ did not ask Mr. Tommaney enough questions concerning his residual functional capacity.

I do not see any such failure in this case. The ALJ gave Mr. Tommaney the opportunity to describe his pain and debilitation during the relevant period. *See, e.g.,* Hearing Tr. pp. 13-15, 26-27. Nor do I agree with Plaintiff's apparent position that the ALJ's focus on medical records and doctor's visits during the hearing somehow detracted from the quality of her review.

### 3.    *Alleged Failure to Explain Reasoning, Including Rejection of Treating Physician Opinion.*

Finally, Plaintiff's papers raise the issue of whether the ALJ sufficiently explained why she accepted the testimony of one reviewing physician over the opinions of Mr. Tommaney's treating physician. At least at Step 4, I read the ALJ's finding differently. The ALJ did rely on the opinion of the treating physician, Dr. Alladin.

That said, the ALJ's interpretation of Alladin's November 2007 medical form is open to question. That document was a checkbox form. The question regarding sitting asked first whether the patient was "limited" or had "no limitation." Dr. Alladin checked "limited." Beneath are three boxes: "up to 8 hours per day," "up to 6 hours per day," or "less than 6 hours per day." Dr. Alladin checked the bock for "less than 6 hours per day." The ALJ, citing this as the sole supporting evidence, found that Mr. Tommaney could do work requiring sitting for 6 hours, and standing for 2 hours, per day. Dr. Alladin's

---

[17] *Roberts v. Comm'r of Soc. Sec.,* 2013 U.S. Dist. LEXIS 68259 (D.N.J. May 14, 2013) (quoting *Wallace*).

checkbox report does not go nearly so far; it does not constitute substantial evidence in support of that RFC finding.

More generally, there is a lack of connection between specific evidence and the ALJ's findings or rejection of Mr. Tommaney's testimony. References to "all the symptoms," "the opinion evidence" or the "medical evidence of record" may be emblematic of valid reasoning, but the reasoning is not made express. As a result, there is a lack of explicit weighing of relevant evidence, particularly as to each of the aspects of the RFC.[18] This, too, would require a remand for clarification.

**Conclusion**

Accordingly, it is the judgment of this court that substantial evidence to support the ALJ's finding at Step 5 is lacking. To the contrary, the complete administrative record supports a finding contrary to that of the ALJ at Step 5. I therefore rule against the Commissioner and in favor of the Plaintiff, Mr. Tommaney. I will reverse the Commissioner's decision and order that the Commissioner award disability benefits for the period of August 26, 2006 through July 15, 2008, for the reasons stated in Analysis, Part I, above.

I also note in the alternative that, if I did not reverse, I would remand on the additional grounds stated in Analysis, Part II, above.

An appropriate order will issue.

Dated:  August 1, 2014

**Hon. Kevin McNulty**
**United States District Judge**

---

[18] *See Burnett v. Commissioner of SSA*, 220 F.3d 112, 119-120 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x. 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.")